at all versus David Massi at all. Thanks. Good morning, Your Honors. Tom Donohue for the defendant's appellant. May I reserve two minutes for rebuttal? Yes. Thank you, Your Honor. Your Honors, I'd like to start off by addressing the plaintiff's three theories of excessive force in this case. The first being that the handcuffs should have been applied in the front. The second being the takedown of the plaintiff to the bed and then to the floor is excessive force. And then either a knee in the back during the cuffing or a knee strike during the cuffing is excessive force. In this case, the officer's decision to handcuff the plaintiff behind the back instead of the front is not a constitutional violation. There is no constitutional right that was violated in this case, especially with this court's holding in the 2006 Calvi decision, in which the court held that an officer's actions were reasonable in a judgment call when the officers decided to handcuff a woman behind her back, even when the officers were informed that she had had recent elbow surgery and had a hand deformity in which she suffered damages. Counsel, the only thing we have in the record about why the officer declined to cuff in the front was that it was department policy to cuff in the back. There isn't a statement in there about why the policy was adopted, what the purpose is of cuffing in the back versus the front. So we're left with nothing other than a statement from which we would infer the department thinks it's better practice to cuff in the back than in the front. Well, yes, Your Honor. And I think through the cases that we've cited too in our brief is those cases hold that it is department, for most departments, department policy to handcuff in the back for safety reasons. Well, a little more evidence on the point would have been helpful to us. I apologize for that, Your Honor. But for the policy, we have the case against the municipality in this case, summary judgment has entered for the municipality and is not on review. Yes, we know. For this court, Your Honor. So for the officers, for the policy, it's, of course, the Fourth Amendment that applies and not the policy to these officers. So, Your Honors, I suggest in the light of Calvi and then as the main district court applied the Calvi decision in Ray versus Donovan, in which case that was a fatigued trucker who was being arrested for that and not having his log book up to date, he informed police officers that he had had a damaged wrist. He tried to show a medical documentation to show that he could not be handcuffed. The officers went ahead and handcuffed. And the Ray court applied Calvi and didn't even do a qualified immunity analysis and said, there's just no constitutional violation here that is not excessive force. Mr. Donohue, what are we to do with the, what would you propose we do with the testimony that, whether or not he resisted by failing to comply with where he put his hands? Two things I said. Once he was taken to the ground, as I understand it, he testified, he offered no resistance at all, and one of the officers administered three so-called knee strikes. Is it, don't we need to accept that testimony? And if so, how do you get around that? Well, there's two responses to that, Your Honor. The first is the plaintiff has conceded at the summary judgment level and here that he was resisting arrest after being ordered to put his hands behind his back. I read that as him saying he resisted putting his hands behind his back. Yes, Your Honor, and that's resisting arrest. Right. But then once they take him to the ground, if all he did was not put his hands behind the back and then they forcibly put them behind his back and he then offered no resistance at all from that point forward, could the officers constitutionally knee him three times intentionally? They could, Your Honor, if the knees are to get him to comply with their constitutionally legal arrest. But what are we to do with his testimony that while on the ground he wasn't resisting? Well, to that I suggest that the reason that he, no reasonable jury could find that he was not resisting by looking at the video, which is why the plaintiff concedes that he was not cooperating and was resisting when ordered to put his hands behind his back. But we don't decide whether summary judgment was or was not appropriate for resolving facts on interlocutory review, do we? Don't we need to take his testimony that while on the floor he wasn't resisting? Don't we need to take that as a given? Yes, Your Honor, and in that case what I suggest the court does is that's still constitutionally permissible conduct on the part of the officers because in that case he would be passively resisting if that's what he is claiming. His testimony, which he's not claiming now, but he did testify that I was too weak to resist. And I suggest by looking at the video, no reasonable jury could determine that. But if the court determines or takes that testimony and credits it, that would be passive resistance. And there are a line of cases that we cited in our brief. When somebody is passively resisting, it is constitutionally permissible conduct for officers to use compliance techniques such as a knee strike or pain to the nerve in the jaw. How long from the time he was told that he was going to be cuffed in the back, how long did this whole incident take? Your Honor, my estimate based on the testimony in the video is maybe 15 seconds or so. What the plaintiff testifies is he refused to put his hands behind his back. He put his hands forward. The officer then, Officer Massey, then immediately took him to the bed. Then both officers took him to the floor. And from then on the video takes over. So it's a matter of 15, 20 seconds or so. And so I suggest that we don't even need to get to the qualified immunity analysis here. Because of this court's holding in Calvi as applied by Ray and then certainly the Jackson decision that this court had cited to in the Calvi decision in which the plaintiff says to the officer, I'm injured, can I please go down to the ground by myself as she's getting down to her knees, the officer sort of knees her in the back, forcibly puts her to the ground. And that was held to be constitutionally permissible. Also, the case that the district court relies on, I suggest the facts of that case are different. And that's the Aceto case. And the Aceto court also didn't have the benefit of the Calvi case from this court. It was decided before then. And I suggest that the Aceto court also should have granted the officers qualified immunity because that court acknowledged a split among the constitutionality of handcuffs. You've reserved two minutes. Thank you, Your Honor. Good morning. May it please the court, my name is Robert Sinsheimer and I represent Brian Hunt. A defendant began by articulating what he thought was my position on excessive force. Let me make really clear what my position is. My position is that absolutely no force was necessary at all. This guy didn't even need to be arrested. Now, I know I'm probably not going to get away with that in front of a jury. And I don't mean to be a wise guy. But I mean to make a larger point, which is that this is a guy who's being arrested at 6 o'clock in the morning for an unpaid traffic ticket in his own bed. And as I'm sure the court recalls, when we began the case, we had evidence of retaliation. And I believe to this day that the real reason they arrested him is because he wrote that book. But he said in his deposition, you know, I don't really think that's the reason they arrested me. And so I'm stuck with it for now as deposition testimony. And, of course, I'm going to follow the ethical rules. But I do want you to look at the big picture. The guy's asleep in his own bed. He's five days removed from surgery. The cops come into his house and they want to cuff him behind his back. And what they do when he says, no, and by the way, I think you got it exactly right, Judge Cayetta, the word, quote, resist, end quote, my brief, a poor choice in light of the fact that it's also the word of a crime. But he was acquitted of resisting arrest. And I don't mean he resisted in any criminal way. I mean, he said, this is your honor, articulate, hey, I don't want my hands to go behind my back because it's going to stretch my stitches and it's going to hurt. And his wife was there watching the whole thing. But he had no stitches. Huh? Well, he had stitches. He clearly had wounds. And I myself. He had what appeared to be a scar. Yeah, I think he also had a stitch or two. And I could be mistaken on the record. He had just had surgery five days before. I think that your honor's point is that it was robotic and they do it a little differently. I understand that. But he had invasive surgery five days before he was healing. Now, that's sort of an overview of how we look at the facts. A more important point, perhaps, since we're at the First Circuit interlocutorally, is what, if any, deference your honors owe to the trial judge who denied summary judgment. Now, I know. None. Well, I know. I may have an argument that there are facts in dispute that are material. But we don't owe any deference. Why don't you keep going? Well, let me just point out something. Maybe I'm just kidding. That in your honor's dissent in Jennings v. Jones, you began by pointing out the qualified immunity is first and foremost for the trial judge. Now, I understand there's de novo. So I perhaps overstated when I used the word deference. I certainly don't mean to suggest that this court owes that formal obligation to the trial court. But what we are talking about in the larger picture is whether or not I'm entitled to a jury. I'm not here asking you to rule, of course, that there was excessive force. All I'm asking you to do is give me a chance. And the trial judge has already done that. And I'm suggesting that the trial judge, who's experienced with the trial of jury cases, articulated exactly the correct reasons. And the material dispute of fact, your honor, and this is kind of the problem in these kind of situations, is whether or not the force was excessive. That's a jury question unless it's so clear that it was not that you could rule as a matter of law. And I have to accept under cases like Scott v. Harris and the more recent McGrath First Circuit cases that there are those cases. My personal view might be that, you know, why not let the jurors decide whether there's excessive force or not? But there are these few cases, few, where the appellate courts, including the Supreme Court of the United States and this honorable court, has said that we find it so clear as a matter of law that there's either not excessive force or there's qualified immunity that we have to rule for the defense. But what I'm asking you to do here is to accept the finding of the trial court, that I suggest respectfully is a finding of fact, that no reasonable or that any reasonable jury, excuse me, could see excessive force on the totality of the record. Now I addressed it. I think what you're saying is that part of that totality is that the nature of the arrest for the crime makes somehow what they did more heinous than it would otherwise have been. To the extent I can, absolutely and unequivocally. Why does that really make any difference? Because the amount of force necessary is without question a continuum based on what the police are actually confronted with. Look, if you say respectfully take a shooting, take the most egregious case in the world, whether or not, you know, a shooting by police that results in a fatality. Well, that's legal when the conduct requires it. But here, what about their knowledge that he'd been involved in an illegal drug venture? You know, that's a red herring, Your Honor. It's absolutely out of the case. They came at 6 o'clock in the morning. Isn't it undisputed in the statement of material facts that they were aware of that? It's a tiny town. The guy had a tiny little criminal case. I'm not denying his criminal record. Of course they were aware of it. Okay, so what we have is police showing up to arrest someone on a ticket for offense A, admittably very minor, but they know he's been involved or think he's been involved in some illegal drug distribution. And he says he doesn't want to be handcuffed in the normal way. They then engage in a conversation with him, and they actually visibly inspect the arthroscopic scars and then decide they're not going to leave him where they could strangle one of them. What's wrong with that? Well, what's wrong with it is, first of all, they used excessive force. But second of all, it's the light most favorable to the defendant, and I suggest respectfully we need to look at this in the light most favorable to the plaintiff. Here's a guy lying asleep in his own bed. There's a lot of people in the community that have had issues that are irrelevant. You know, I'm not justifying it. I'm not suggesting that. So whether someone's a drug dealer or not is irrelevant to it. He wasn't a drug dealer, Your Honor. See, that's why it's truly a red herring. He was involved. He was a user, and he took a plea in a little state district court about something that has absolutely nothing to do with this. What this was about was they wanted to get him. They got to his house at 6 o'clock in the morning. I asked, Your Honor, You say they wanted to get him. You have no direct evidence that that is the case, and typically the police want to handcuff people with their hands behind their back because it is safer for them. Hands in front of them, it's apparently considered much less safe. So in this case, he was asked to put his hands behind his back. He had no obvious injury, even though he said he had been operated on, but it wasn't his shoulder, it wasn't his wrist, it wasn't any of those things, and then he resists. He didn't resist in a physical way. Judge, again, the line most favorable to the plaintiff is not the way you phrase it. Isn't the line truly most favorable to the plaintiff? The guy is lying sound asleep in his bed. The cops come in with a warrant that probably shouldn't have even issued. And by the way, I don't believe in coincidences. He pays the fine, but it happens that the warrant doesn't issue because the police are out to get him. I think that allows a difference, but they had a valid warrant. He's sound asleep. He says, I'll go. I've already cleared this up. Just let me put my handcuffs in front of me. When they throw him to the ground, they kick him three times. And as Judge Kayana asked, how do you get away with kicking the guy three times when he's on the ground? As far as the video is concerned, a picture is worth a thousand words. You don't want to hear from me a thousand words, I suspect. You do have a time limit. Yes, and it's running out quite clearly. And at the same time, I don't want to say, because I think it would be insulting to this court, look at the video and make up your own mind, because we have the determination by Judge Young that he thinks, as a very, very, very experienced trial judge, that there's enough there for 12 people to decide that this could be excessive force. And I think that's where I'm going to close. I just need to respectfully remind the court, and I ask you to rule, obviously, there's excessive force, even if it's a sliver. I ask you to rule there's enough for us to go to a jury, as the trial court found, and I ask that you affirm the judgment. Unless you have questions, I'm all set. I have a question. Thank you. You seem to think that the issue of handcuffing in the front or the rear is of no moment. It's simply not important to the case, because from the very beginning, you say, you have to look at how all of this started. They overreacted from the very beginning, and the case shouldn't turn on whether the police were immunized on the question of the handcuff. Is that correct? I don't think it's of no moment. I think it's a significant fact, and I'm sorry I left you with the wrong impression, but I think it's a significant fact. It's part of the greater token. Okay, and if the officers clearly have immunity, if they clearly have immunity on the question of the handcuffs, what's left of your case? The kicking. The kicking after he was down. Yeah, he's on the ground already, and they're trying to cuff him. And they still haven't cuffed him. At that precise moment, probably not. They're kicking him to force cuffs behind his back. That's right. That's what they're doing. That's what they're doing. It's all part of getting him cuffed. It's part of the totality of circumstances where they basically harassed him and beat him up to get him to come down to pay a fine that he'd already paid. I understand, Your Honor, at some point when one gets into a discussion with the justice, if that's really how you're going to decide the case, I guess I'm going to lose. But I think if you go and look at Calvi and you go and look and see how it's distinguishable, you go and look at Aceto, these cases, I understand, are close. Okay, thank you, Calvi. Thank you very much. Thank you, Your Honors. I'd like to point out in my two minutes that it wasn't a small judge drug charge that the officers were aware of when they're in the plaintiff's house and they have to make these split-second decisions about do we cuff in the front or do we cuff in the back. This was a major three-year drug ring where there were, I believe, 200 police officers involved, large amounts of cocaine, heroin, boat seized, a limousine seized. What was his role? I believe his role was he was trying to sell an amount of cocaine and that he was caught because he was on a federal wiretap is how he got involved in that. So the police officers knew that he was involved in this very large heroin and cocaine ring, and that's what they're aware of when they need to make these split-second decisions in his house. I'd also like to point out that in the cases, most of which were the officers were either found to have not violated the Constitution or granted qualified immunity, it's not sort of an abdomen issue. It's always an arm or a wrist or a shoulder. And in this case, moreover, had the officers had the time, which they didn't in this case, to call the plaintiff's surgeon, the plaintiff's surgeon would have said to them, no, I did a small lysis of adhesions that couldn't have been affected by the arrest. And we know that because of the record from the emergency room in which the ER doctor spoke with the surgeon. I'd also like to point out. But they didn't necessarily know that at that point. That's an after-the-fact determination that, in fact, there was no risk. That's correct, Your Honor. It seemed in the district court's decision in the Aceto case, that meant something to the district court, that the officers had a chance to contact doctors or a physical therapist. And in this case, had they had the opportunity to do that, which this case is rapidly moving unlike the Aceto case, the doctor would have said, well, he can't be hurt. For whatever reason, the district court in this case ignored the Calvi case. And I submit, at the very least, these officers are entitled to qualified immunity. Thank you.